UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DIGITAL BROADCASTING SOLUTIONS LLC, | § | Case No. 2:22-cv-00335-JRG |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| | § | JURY TRIAL DEMANDED |
| DISH NETWORK L.L.C and DISH TECHNOLOGIES L.L.C., | § | |
| Defendants. | § | |

**DEFENDANT DISH NETWORK L.L.C.'S
MOTION PURSUANT TO 28 U.S.C. § 1404(a)
TO TRANSFER TO THE DISTRICT OF COLORADO**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

LEGAL STANDARDS ....................................................................................... 2

ARGUMENT: THIS CASE SHOULD BE TRANSFERRED TO COLORADO ....................... 3

    A.    This Case Could Have Been Brought In The District of Colorado ...................... 3

    B.    The District of Colorado Is "Clearly More Convenient" Than The Eastern District of Texas ............................................................................................................. 4

        1.    The Sources of Proof Are In Colorado, Not Texas ..................................... 4

            (i)    DISH's Sources of Proof ............................................... 5

            (ii)    DBS's Sources of Proof Are Not In This District Either ............... 6

        2.    The Availability of Compulsory Process To Secure Attendance of Witnesses Favors Transfer To Colorado .................................................... 8

        3.    Transferring To Colorado Would Reduce The Cost of Attendance of Willing Witnesses ..................................................................................... 9

        4.    The Other Factors Affecting Ease And Expense of Trial Favor Transfer 11

        5.    The Comparative Congestion of The Two Courts Is Neutral ................... 12

        6.    Colorado Local Interests Favor Transfer ................................................. 13

        7.    The Remaining Factors Are Neutral ........................................................ 14

CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Blue Spike, LLC v. Clear Channel Broad., Inc.*,
   No. 6:12-cv-499, 2014 WL 11619168 (E.D. Tex. July 2, 2014) ..............................................8

*Broadband iTV, Inc. v. DISH Network L.L.C.*,
   6:19-CV-00716 (W.D. Tex.).................................................................................................15

*Farmobile LLC v. Farmers Edge Inc.*,
   C.A. No. 2:21-cv-00411-JRG, 2022 WL 2653893 (E.D. Tex. July 7, 2022) .....................8, 12

*GeoTag, Inc. v. Aromatique, Inc.*,
   2013 WL 8349856 (E.D. Tex. Jan. 14, 2013) ........................................................................11

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947).........................................................................................................2, 13

*In re Apple*,
   979 F.3d 1332 (Fed. Cir. 2020).............................................................................................12

*In re Apple Inc.*,
   No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) .............................................6, 13

*In re DISH Network L.L.C.*
   No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)
   ......................................................................................1, 2, 3, 4, 6, 8, 9, 12, 14

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)......................................................................................4, 8, 9

*In re Google Inc.*,
   No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ......................................................9

*In re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)...............................................................................................7

*In re Hulu, LLC*,
   No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ....................................................8

*In re Juniper Networks, Inc.*,
   14 F.4th 1313 (Fed. Cir. 2021) ......................................................................................9, 12, 13

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011)..............................................................................................13

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009) ......................................................................................14

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ...........................................................................................2

*In re Samsung Elecs. Co., Ltd.*,
    2 F.4th 1371 (Fed. Cir. 2021) ...............................................................................12, 13

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008).........................................................................................3

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) .................................................2, 3, 4, 8, 9, 11, 13, 14

*Inhale, Inc. v. Gravitron, LLC*,
    No. CV 18-3883 PSG, 2018 WL 5880192 (C.D. Cal. Sept. 5, 2018) .....................................4

*Mass Engineered Design, Inc. v. SpaceCo Bus. Sols., Inc.*,
    No. 6:14-cv-411, 2016 WL 6824415 (E.D. Tex. Mar. 28, 2016) ...........................................14

*Oyster Optics, LLC v. Coriant Am., Inc.*,
    No. 2:16-cv-1302, 2017 WL 4225202 (E.D. Tex. Sep. 22, 2017)...........................................8

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981).........................................................................................................2

*R2 Sol'ns LLC v. Target Corp.*,
    No. 4:21-cv-92, 2021 WL 2550908 (E.D. Tex. June 22, 2021) .........................................4, 11

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1514 (2017).......................................................................................................3

STATUTES

28 U.S.C. § 1332(c)(1).........................................................................................................4

28 U.S.C. § 1400(b) .............................................................................................................3

28 U.S.C. § 1404(a) ...............................................................................................1, 2, 3, 6

**INTRODUCTION**

Good cause exists to transfer this case to the District of Colorado under the *forum non conveniens* provisions of 28 U.S.C. § 1404(a).  While the Plaintiff Digital Broadcasting Solutions, LLC ("DBS"), a Texas limited liability company, has sued DISH Network L.L.C.[1] ("DISH") here in the Eastern District of Texas, the "center of gravity" of this dispute is in Colorado.  *See In re DISH Network L.L.C.* ("*In re DISH*"), No. 2021-182, 2021 WL 4911981, at *2 (Fed. Cir. Oct. 21, 2021).  The criteria considered under 28 U.S.C. § 1404(a) weigh in favor of a transfer to Colorado:

- DISH is a Colorado company with its headquarters in Englewood, Colorado.

- The current and former DISH engineers who worked on the accused products and systems, as well as relevant iterations of DISH's systems incorporating the accused technology dating back to 2007, are located in Colorado; none are in this District.

- DISH witnesses likely to testify about financial, sales, and marketing information are located in Colorado in the Denver area.

- Source code and technical documents, as well as financial documents, relevant to DBS's claims are stored and maintained in Englewood, Colorado and the Denver area generally.

- DISH's accused products and systems are used throughout the United States and have no special connection to this District, and DISH's only presence here is limited to operations that have nothing to do with DBS's infringement claims.

---

[1] DBS's Complaint also accused DISH Technologies L.L.C. of infringement (Dkt. 1, ¶ 3), but DBS dismissed DISH Technologies L.L.C. without prejudice under Rule 41(a) on November 7, 2022. Dkt. 16.  The Court "accept[ed] and acknowledge[d]" the dismissal of DISH Technologies L.L.C. on November 8, 2022.  Dkt. 17.

As for the plaintiff, DBS's connections to Texas are tenuous—just an address in Austin of a mail-forwarding service.  The lone inventor on the asserted patents, who is also the only principal listed on DBS's 2022 registration documents, resides in California.  Denver is centrally located and has a major international airport that is convenient for witnesses from all over.  Moreover, the judicial caseload of Colorado judges is similar to that of judges in this District.

On very similar facts—a patent infringement action accusing DISH's exact same Hopper set-top boxes—the Federal Circuit recently ordered the case transferred to Colorado, stating "[w]hile [the plaintiff] may prefer to litigate its cases in . . . Texas, that is not enough to overcome a transfer motion directed to a district which is the home of evidence, witnesses, and the conduct giving rise to the action."  *In re DISH*, 2021 WL 4911981, at *4.  The same result is merited here.  Transfer under 28 U.S.C. § 1404(a) is therefore appropriate.

## LEGAL STANDARDS

Section 1404(a) authorizes a court to transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice[.]"  Fifth Circuit law states that a motion to transfer should be granted if "the movant demonstrates that the transferee venue is clearly more convenient."  *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*")).  If the proposed venue is proper, courts weigh the private and public interest factors—set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)—to determine if that burden is met.

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  The public interest factors are:

"(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*.

The plaintiff's choice of forum is not a factor in this analysis, but instead is accounted for by the defendant having the burden to clearly demonstrate good cause for the transfer. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citing *Volkswagen II*, 545 F.3d at 314 n.10).

## ARGUMENT: THIS CASE SHOULD BE TRANSFERRED TO COLORADO

Colorado is the appropriate venue for this case.  Indeed, like the Federal Circuit recently found in granting DISH's petition for a writ of mandamus to have a separate patent dispute accusing the exact same DISH set-top boxes transferred to Colorado, Colorado is "the center of gravity" for this case—the key witnesses who developed the accused products, the relevant documents, and the headquarters of DISH are all located in Colorado.  *See In re DISH*, 2021 WL 4911981, at *4.  Each of the applicable factors weighs in favor of transfer, and this District has no meaningful connection to this dispute.  As such, good cause exists to transfer.

### A.    This Case Could Have Been Brought In The District of Colorado

The first determination to be made under 28 U.S.C. § 1404(a) is whether the claim could have been filed in the judicial district to which transfer is sought.  *Volkswagen I*, 371 F.3d at 203.  Here, it is clear this case could have been brought in the District of Colorado.

Under 28 U.S.C. § 1400(b), venue is proper for patent infringement actions in a judicial district where a defendant resides, which means the District of Colorado is indisputably a permissible venue for this case.  A domestic corporate defendant is deemed to reside in its state of incorporation and in the state where it has its principal place of business.  *TC Heartland LLC*

*v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017); 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business . . . ."). For venue purposes, limited liability companies are treated like corporations. *See Inhale, Inc. v. Gravitron, LLC*, No. CV 18-3883 PSG (KSx), 2018 WL 5880192, at *2–3 (C.D. Cal. Sept. 5, 2018).

As DBS admits, DISH is a Colorado limited liability company with its principal place of business in Colorado. Dkt. 1, ¶ 2. DISH resides in Colorado, making venue proper there.

### B.   The District of Colorado Is "Clearly More Convenient" Than The Eastern District of Texas

Both the private and public interest factors confirm that the District of Colorado is "clearly more convenient" than this District. *Volkswagen II*, 545 F.3d at 315. Almost every relevant factor, including the most important factors, weigh heavily in favor of transfer. No factor weighs in favor of this District, and plaintiff's choice of forum is given no weight. As such, DISH's request to transfer to the District of Colorado should be granted.

#### 1.   The Sources of Proof Are In Colorado, Not Texas

The relative ease of access to sources of proof favors transfer to the District of Colorado. "Most evidence in patent infringement cases comes from the defendant so 'the place where the defendant's documents are kept weighs in favor of transfer to that location.'" *R2 Sol'ns LLC v. Target Corp.*, No. 4:21-cv-92, 2021 WL 2550908, at *2 (E.D. Tex. June 22, 2021) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Moreover, in *In re DISH*, the Federal Circuit found that it was error for the district court to discount this factor because documents are stored electronically; this factor must be given due weight. *In re DISH*, 2021 WL 4911981, at *2.

(i)      **DISH's Sources of Proof**

As the defendant in a patent litigation against a non-practicing entity, DISH is likely to produce significantly more documents than DBS, and DISH's documents are overwhelmingly in Colorado.  DBS alleges infringement by DISH's DVR devices "that utilize technology to skip downloaded programming," including the "DISH Hopper, DISH Hopper 2, DISH Hopper 3, Hopper with Sling, and Hopper Duo."  Dkt. 1, ¶ 45.  Documents with potential relevance to these accused products are kept in DISH's headquarters, located in Englewood, Colorado (a suburb of Denver), as well as a nearby engineering office also located in Englewood.  Ex. 1, Minnick Decl., ¶ 5.  For example, potentially relevant documents regarding the design and development of the accused products, as well as documents related to DISH's prior art patents, are located in Colorado.  *Id*. at ¶ 6.  Relevant source code is also located in the District of Colorado.  *Id*. at ¶ 6.  Finally, non-technical documents (*e.g.*, marketing and financial records) are also kept in Colorado.  *Id*. at ¶ 6.

On the other hand, few (if any) relevant documents from DISH are likely to be found in the Eastern District of Texas.  DBS notes in its Complaint that DISH has certain operations in this District, but none of these operations are relevant to the present dispute.  First, DBS identifies DISH's authorized retailers within the district, but as the name implies, these are merely independently owned retail locations that are authorized to solicit customer orders for DISH services and equipment.  Ex. 1, Minnick Decl., ¶ 12.  These third-party retail locations are not DISH facilities and do not have any DISH employees.  *Id*.  Next, DBS alleges that DISH operates "Local Receive Facilities (LRFs) in this district," which are used to "store[] equipment such as receivers and servers," and argues that these LRFs have DISH employees that "install, service, repair and/or replace equipment associated with the LRFs."  Dkt. 1, ¶¶ 10–12.  However, DISH's "LRFs" are merely where DISH receives signals for local stations in designated market areas; these facilities have nothing to do with the development or provision of the accused products or

services.  Ex. 1, Minnick Decl., ¶ 10.  DBS also includes photos of DISH's alleged "regular and established places of business" in Beaumont and McKinney.  Dkt. 1, ¶¶ 15–16.  But, as can be clearly seen in these photos, these "places of business" are merely warehouses and installation centers operated by DISH or its affiliates.  Ex. 1, Minnick Decl., ¶ 11.  No engineering documents, source code, or other relevant documents are kept at these locations.  *Id.*  Nor do the operations conducted at these locations have anything to do with the way that the accused hardware or software operates.[2] *Id.*  In short, these Texas operations have no information about the merits of this lawsuit, and the District of Colorado has a clear comparative advantage over the Eastern District of Texas "with regard to the ease of access to the sources of proof."  *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022).  And, notably, these Eastern District facilities are far less extensive than those considered by the Federal Circuit when it ordered transfer out of the Western District of Texas.  *In re DISH*, 2021 WL 4911981, at *3 (noting the presence of, for instance, DISH call centers and remanufacturing facilities in the Western District of Texas).

(ii)    <strong>DBS's Sources of Proof Are Not In This District Either</strong>

DBS is not likely to have sources of proof located in Texas either.  DBS is a non-practicing entity formed less than 4 months ago by the lone inventor on the asserted patents, Todd Fitzsimmons.  Ex. A (DBS formed June 27, 2022, listing Todd Fitzsimmons as the only "governing person").  Moreover, while DBS purports to have an office located in Austin (in the Western District), (Dkt. 1, ¶ 1), DISH's research suggests that office is of DBS's registered agent and mail-forwarding service, Texan Registered Agent LLC; there is no signage for Digital Broadcasting

---

[2] DBS further alleges that "DISH targets its advertisements to residents of this district" and points to the fact that DISH has a registered agent to accept service in Texas.  Dkt. 1 at ¶¶ 9, 17.  But neither of these alleged facts are relevant to the consideration of whether another venue is more convenient under 28 U.S.C. § 1404(a).

Solutions, LLC at that address, and it does not have any DBS employees.  Ex. B (DBS's address is the same address as "Texan Registered Agent LLC "); Ex. 3, Decl. of Amy Bergeron, ¶¶ 3–5. Indeed, Texan Registered Agent's website indicates that its service includes "Free Mail Forwarding" — "5 regular mail scans each year, in addition to all of your legal mail" and a "Texas Business Address you can use to protect your privacy."  Ex. B.  In essence, the plaintiff's "presence" in Texas appears to be little more than a facade.  Despite investigating the issue, DISH could not uncover any business activity by the plaintiff anywhere in Texas.

Indeed, the alleged inventor, Mr. Fitzsimmons, who also served as the original prosecuting attorney for the patent applications, resided in southern California at the time of filing of those applications and continues to reside there, practicing law.  *See* Dkt. 1, Ex. 1 (showing Mr. Fitzsimmons resided in Long Beach, California); Dkt. 1, Ex. 2 (showing Mr. Fitzsimmons resided in Gardena, California); Ex. C (Mr. Fitzsimmons' law practice website in California); Ex. D (State Bar of California search for Mr. Fitzsimmons).  Mr. Fitzsimmons is not a member of the Texas bar association and does not appear to practice law in Texas.  Ex. E (Texas Bar search results showing no Todd Fitzsimmons).  In short, Mr. Fitzsimmons does not appear to have any contact or relationship with the state of Texas except for the ownership and control of DBS.  Thus, Mr. Fitzsimmons' documents, including those relevant to the prosecution of the applications, standing and inventorship, and his law practice, are likely located in California, not Texas.

Moreover, even if DBS has moved documents to its Austin "office" in anticipation of litigation, those documents should not be considered in the transfer analysis.  *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009) (documents that have been moved to a particular venue in anticipation of litigation should not be considered).  As such, like DISH, DBS's documents and witnesses are expected to be outside of this District and outside of Texas.

Because neither DISH nor DBS has relevant evidence in the Eastern District of Texas, this factor strongly favors transfer to the District of Colorado.

> ## 2.  The Availability of Compulsory Process To Secure Attendance of Witnesses Favors Transfer To Colorado

The compulsory process factors favor transfer to Colorado because there is no evidence of any non-party witness that could be compelled to attend trial in this District, but at least one critical non-party witnesses whose presence could be compelled in Colorado but not Texas.[3]

Fed. R. Civ. P. 45(c) provides a court with the power to command a non-party to appear for trial or deposition in the state where it is located. Because there are no known potential witnesses in Texas, the Eastern District of Texas's subpoena power provides no benefit here. Conversely, the subpoena power of the District of Colorado will potentially prove useful for at least one key former DISH employee, Steve Casagrande, which thus favors transfer. *Oyster Optics, LLC v. Coriant Am., Inc.*, No. 2:16-cv-1302, 2017 WL 4225202, at *6 (E.D. Tex. Sep. 22, 2017); *see also Blue Spike, LLC v. Clear Channel Broad., Inc.*, No. 6:12-cv-499, 2014 WL 11619168, at *4 (E.D. Tex. July 2, 2014) (potential for former employee witnesses favored transfer).

Steve Casagrande is a former DISH employee who resides in Colorado and likely has relevant knowledge.[4] Mr. Casagrande worked for DISH as a Director of Systems Engineering for 16 years and retired in 2019. Ex. 1, Minnick Decl., ¶ 13. Mr. Casagrande is a named inventor on a DISH patent that is prior art to the patents asserted in this matter (U.S. Patent No. 8,510,771),

---

[3] *See Volkswagen II*, 545 F.3d 304, 316 (5th Cir. 2008) (explaining that the "availability of compulsory process" factor relates to non-parties); *Genentech*, 566 F.3d at 1345 (discussing the importance of this factor); *Farmobile LLC v. Farmers Edge Inc.*, C.A. No. 2:21-cv-00411-JRG, 2022 WL 2653893, at *4 (E.D. Tex. July 7, 2022) (stating that "the location of willing witnesses" is not considered under this factor).

[4] There is a presumption that witnesses are unwilling to travel, so no evidence needs to be submitted by DISH to establish this point. *See, e.g., In re DISH*, 2021 WL 4911981, at *3; *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, *4 (Fed. Cir. Aug. 2, 2021).

and has deep knowledge of the accused products and services.  *Id*.  Mr. Casagrande lives in Colorado (*see id*.) and is outside the subpoena power of this Court.

The District of Colorado would have the ability to secure his attendance.  Moreover, because the development of the accused products and features occurred in Colorado, not Texas, it is far more likely that any other witnesses with relevant knowledge that come to light during discovery will be in Colorado and not in Texas.  This factor thus favors transfer.  Notably, in *In re DISH*, the Federal Circuit held that the district court had erred by not giving sufficient weight to the location of non-party witnesses exactly like the third-party witness identified here.  *In re DISH*, 2021 WL 4911981, at *3 ("The court's finding that this factor was neutral was based on clear legal error.").

### 3. Transferring To Colorado Would Reduce The Cost of Attendance of Willing Witnesses

The willing witness attendance factor, which considers the convenience of witnesses, strongly favors transfer to Colorado.

"When the distance between an existing venue for trial of a matter and a proposed venue . . . is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen I*, 371 F.3d at 204–05.  "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment."  *Id.* at 205.

This factor has been deemed the *most* critical factor in any transfer analysis.  *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) ("[P]robably the single most important factor in a transfer analysis.") (applying Fifth Circuit law and quoting *Genentech*, 566 F.3d at 1343); *In re DISH*, 2021 WL 4911981, at *2.  Moreover, both the convenience of *party* and non-party witnesses must be considered, not just non-parties.  *See, e.g.*, *In re Juniper Networks, Inc.*,

14 F.4th 1313, 1319 (Fed. Cir. 2021) (rejecting an approach that discounted importance of this factor for *party* witnesses).

Attending trial in Colorado will be far less burdensome for willing witnesses, including the members of DISH's Colorado-based engineering and product development teams.  The key DISH engineers who developed these products and prior art patents associated with DISH's PrimeTime Anytime and AutoHop technology, as well as those who are responsible for issuing ongoing software updates for these products, are all located in Colorado.  Ex. 1, Minnick Decl., ¶ 7 (identifying specific DISH employees, including Mark Templeman, Yunfeng Yang, Charlie Zetterower, Robert Sadler, and Dan Minnick).  Likewise, any witnesses who testify regarding DISH's marketing of the accused products, DISH's revenue from the accused DISH products, and DISH customers' usage of the accused products would all be located in Colorado.  *Id.*, ¶ 8.

In contrast, there are no relevant witnesses anywhere near 100 miles of Marshall, so witnesses for both sides will suffer these inconveniences.  Barring transfer, multiple witnesses from Colorado and one from California will likely need to fly to Dallas/Fort Worth International Airport ("DFW"), rent a car, and then drive about three hours to reach the courthouse in Marshall.  Ex. F (showing a drive of 172 miles from DFW).  Alternatively, they could fly to Shreveport (about 35 miles away) or Texarkana (about 80 miles away), but these small airports have relatively few flights per day and limited direct flights, leading to lengthy overall travel times for most witnesses.  Ex. G (Shreveport to Marshall drive time); Ex. H (Texarkana to Marshall drive time); Ex. I (only one direct flight from Denver to Shreveport per day); Ex. J (Texarkana only has direct flights to/from DFW).

A transfer to Colorado would be more convenient for all potential witnesses.  For the majority of DISH's expected witnesses, including the ones identified above, Colorado is their

home district, minimizing both monetary costs and "the personal costs associated with being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317.  The city of Englewood, Colorado, where DISH is headquartered, is a suburb of Denver and is less than 20 miles from the District of Colorado courthouse in Denver.  Ex. K.  Should DISH need to bring employee witnesses from outside Colorado, they will be able to use DISH's offices near Denver to minimize the inconveniences caused by being away from their home DISH offices and/or by combining the trip with Colorado meetings that might otherwise have been scheduled for a different time.

Traveling to Denver will also be more convenient for out-of-state witnesses.  United, Frontier, and Southwest Airlines have major hubs in Denver, and there are direct flights to Denver from more than 200 destinations (including international locations) daily.  Ex. L.  Additionally, direct flights from Los Angeles to Denver are slightly shorter than flights to DFW, not even considering the long drive to Marshall after landing in Dallas.  Ex. M (direct flights from Los Angeles to Denver are about ~2 hours and 15 minutes); Ex. N (direct flights from Los Angeles to DFW are about 3 hours).  The Denver federal courthouse is less than a half an hour drive from the airport and is easily accessible through public rail lines (*i.e.*, RTD Light Rail) between Denver and the airport.  Ex. O (showing a drive of about 25 miles); Ex. P (showing public transportation routes between downtown Denver and airport).  Because a transfer to Colorado would significantly reduce the "additional distance to be traveled" by all witnesses, this factor also clearly favors transfer.  *Volkswagen I*, 371 F.3d at 204–05.

### 4.    The Other Factors Affecting Ease And Expense of Trial Favor Transfer

This ease and expense of trial factor "serves as a catchall for concerns that may weigh for or against transfer, like judicial economy."  *R2 Sol'ns*, 2021 WL 2550908, at *4 (*citing GeoTag, Inc. v. Aromatique, Inc.*, 2013 WL 8349856, at *5 (E.D. Tex. Jan. 14, 2013)).  Here, there is no judicial economy served by keeping this case in this District because there are no related actions.

The present case against DISH is the only pending lawsuit related to the asserted patents. Furthermore, nothing significant has so far happened in this case; DISH is moving to transfer even before it has answered, so the parties have not taken significant action or expense at this stage. *See, e.g.*, *Farmobile LLC*, 2022 WL 2653893, at *5 ("[T]he early stage of this case contributes to the slight weight afforded to this factor, but at whatever weight, it favors transfer."); *In re Apple*, 979 F.3d at 1343 (error to consider actions taken after transfer motion filed to justify denial of transfer motion). Thus, this factor favors transfer.

5.     **The Comparative Congestion of The Two Courts Is Neutral**

While the Federal Circuit has consistently described this factor as the "most speculative," in this case, this factor is neutral. *In re Juniper*, 14 F.4th at 1322.

Court statistics show that the 2021 caseloads of Colorado and Eastern Texas judges were nearly identical. *See, e.g.*, Ex. Q (582 cases per judge in Colorado vs. 553 cases per judge in Eastern Texas. The data also shows that this District has a higher number of pending cases (750 per judge here, and only 549 per judge in Colorado), indicating a greater number of long-running— *i.e.*, potentially more complex—cases here, weighing in favor of transfer. *Id.* Although the time to trial here is, on average, 10 months faster than in Colorado, the Federal Circuit has discounted the importance of the time to trial[5] and focused on the overall caseload, which is nearly tied. As such, this factor is neutral.

---

[5] *See In re DISH*, 2021 WL 4911981, at *4 ("[A] court's general ability to set a fast-paced schedule is not particularly relevant."); *In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020) ("[A] district court cannot merely set an aggressive trial date and subsequently conclude, on that basis alone, that other forums that historically do not resolve cases at such an aggressive pace are more congested for venue transfer purposes."); *In re Samsung Elecs. Co., Ltd.,* 2 F.4th 1371, 1380–81 (Fed. Cir. 2021) ("[E]ven if the court's speculation is accurate that it could more quickly resolve these cases . . . , neither respondents nor the district court pointed to any reason that [the] more rapid disposition of the case that might be available in the Western District of Texas would be important enough to be assigned significant weight in the transfer analysis here.").

6.      **Colorado Local Interests Favor Transfer**

This factor also favors transferring this case to the District of Colorado.  In *Volkswagen I*,
the Fifth Circuit found that this factor "weighs heavily in favor of" transferring the case from a
district that lacked "any meaningful connection or relationship with the circumstances" of the case
to a district where the plaintiffs and defendants lived and the alleged wrong had occurred.  371
F.3d at 206; *see also In re Apple Inc.*, 2022 WL 1196768, at *3 ("We have held that a party's
'general presence in a particular district' does not alone 'give that district a special interest in the
case.'") (citation omitted); *In re Samsung Elecs. Co., Ltd.*, 2 F.4th at 1380 ("The fact that
infringement is alleged in the Western District of Texas gives that venue no more of a local interest
than the Northern District of California or any other venue."); *In re Juniper*, 14 F.4th at 1319
("[T]he events forming the basis for [the plaintiff's] infringement claims occurred mainly in the
Northern District of California; none occurred in the Western District of Texas.  That is sufficient
to give the transferee venue a greater localized interest in the dispute, which favors transfer.").  As
the Fifth Circuit explained, it would be improper to impose the burden of jury duty on "the people
of a community which has no relation to the litigation."  *Volkswagen I*, 371 F.3d at 206 (citing
*Gulf Oil Corp.*, 330 U.S. at 508–09).

The same analysis applies here.  The Eastern District of Texas is not home to DBS (a 2022
Texas LLC with an unmanned "office" in Austin, *see* § B(1)(ii), *supra*) or its principals, much less
DISH.  *See In re Microsoft Corp.,* 630 F.3d 1361, 1364–65 (Fed. Cir. 2011) (presence in transferor
forum that is "recent, ephemeral, and . . . appear[s] to exist for no other purpose than to manipulate
venue" is afforded little or no weight).  DBS's only principal and the only named inventor, Mr.
Fitzsimmons, resides in California.  The accused products were not developed or designed in Texas.

Although DISH's products do end up in this District, "[t]he Fifth Circuit has unequivocally
rejected the argument that citizens of the venue chosen by the plaintiff have a 'substantial interest'

13

in adjudicating a case locally because some allegedly infringing products found their way into the Texas market." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (citing *Volkswagen II*, 545 F.3d at 317–18).  Where accused products are distributed throughout the United States, "the citizens of the venue chosen by the plaintiff have no more or less of a meaningful connection to the case than any other venue."  *Nintendo*, 589 F.3d at 1198 (quotation marks and citations omitted).  Neither this district nor its potential jurors has any relevant local interest in the present claims against DISH.

By contrast, DISH is one of Colorado's largest private employers, with more than 4,000 employees and 4,000 contractors in the Denver metropolitan area alone.  Ex. 1, Minnick Decl., ¶ 15.  The work that was done by DISH engineers in Colorado and the success of DISH as a Colorado company directly led to the claims asserted here.  It is the Colorado courts—not the courts of Texas—that have an interest in resolving this dispute.  *See In re DISH*, 2021 WL 4911981, at *3 (finding this factor weighed in favor of transfer on similar facts and discounting suggestion that limited DISH facilities in Western Texas change that analysis because "even if these Texas-based operations have some connection to the accused set-top boxes here, that connection is insubstantial compared to Colorado's significant connection to the design and development of the accused features").

Because "there is no relevant factual connection," *Volkswagen II*, 545 F.3d at 318, between this case and the Eastern District of Texas, this factor weighs in favor of transfer to Colorado, where DISH is located and relevant design and development activity occurred.

7.     **The Remaining Factors Are Neutral**

None of the remaining factors dramatically affects the analysis.  Neither of the two districts has any advantage in applying federal patent law.  There are no conflict of laws issues.  *See Mass Engineered Design, Inc. v. SpaceCo Bus. Sols., Inc.*, No. 6:14-cv-411, 2016 WL 6824415, at *5

14

(E.D. Tex. Mar. 28, 2016) (finding congestion, familiarity of law, and avoidance of conflicts were neutral between Eastern District of Texas and District of Colorado).

**CONCLUSION**

There is good cause for the transfer of this action to the District of Colorado.  As in *Broadband iTV, Inc. v. DISH Network L.L.C.*, 6:19-CV-00716 (W.D. Tex.), the accused products (the exact same DISH set-top boxes accused in this case) were designed in Colorado, and the documents and witnesses are there too.  Colorado is more accessible to out-of-towners than Marshall, and Colorado is no less congested than this Court.  By contrast, there are few if any connections to this District, as DBS merely has an unmarked "office" in Austin.  This is not enough to tip the balance where the Federal Circuit has already ordered transfer in near-identical circumstances.  Thus, the same result should be reached here.

Dated:  November 11, 2022

Respectfully submitted,

*/s/ Jamie R. Lynn*

Ali Dhanani
Texas State Bar Number 24055400
Email:  ali.dhanani@bakerbotts.com
Thomas B. Carter, Jr.
Texas State Bar Number 24097467
Email:  thomas.carter@bakerbotts.com
Amy E. Bergeron
Texas State Bar Number 24101506
Email:  amy.bergeron@bakerbotts.com
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
Tel.: (713) 229-1234
Fax: (713) 229-1522

George Hopkins Guy, III
BAKER BOTTS L.L.P.
1001 Page Mill Road, Suite 200
Palo Alto, CA 94304-1007
Email:  hop.guy@bakerbotts.com
Tel.: (650) 739-7500
Fax: (650) 739-7699

Kurt Pankratz
Texas State Bar Number 24013291
Email: kurt.pankratz@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue
Suite 900
Dallas, TX 75201-2980
Tel: (214) 953-6584
Fax: (214) 661-4584

Jamie R. Lynn
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, DC 20001-5692
Email: jamie.lynn@bakerbotts.com
Tel: (202) 639-7786
Fax: (202) 585-1026

*Attorneys for DISH Network, L.L.C.*

**CERTIFICATE OF SERVICE**

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/EMF system per Local Rule CV-5(a)(3) on the 11th day of November 2022.  Any other counsel of record will be served via First Class Mail.

*/s/ Melissa R. Smith*
Melissa R. Smith

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred on October 20, 2022.  Counsel for Plaintiff indicated that Plaintiff opposes this motion.

*/s/ Melissa R. Smith*
Melissa R. Smith